UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BROTHERHOOD OF LOCOMOTIVE )
ENGINEERS AND TRAINMEN, )
1370 Ontario Street, Mezzanine, )
Cleveland, Ohio 44113, )

       Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY CO.,
Three Commercial Place, Norfolk, VA 23510,

and )

NORFOLK SOUTHERN CORP., )
Three Commercial Place, Norfolk, VA 23510, )
       Defendants. )

CASE NUMBER 1:05CV01188

JUDGE: Richard W. Roberts

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 06/14/2005

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Brotherhood of Locomotive Engineers and Trainmen ("BLET") for its complaint against Defendants hereby states:

### JURISDICTION AND VENUE

1. This is an action pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, (hereinafter "the Act"). Accordingly, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. Additionally, declaratory relief is requested pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

2. The injunctive relief sought by this action is necessary in order to enjoin the Defendants' unlawful interference with the rights of employees to organize and form a labor

union to represent them guaranteed by Section 2, Third and Fourth of the Act, 45 U.S.C. § 152, Third and Fourth.

3.  The Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq.*, is inapplicable because this action is brought to enforce the statutory protections of the Railway Labor Act, 45 U.S.C. § 151, *et seq.*

4.  Venue under 28 U.S.C. § 1391(b)(3) is proper, and personal jurisdiction over the Defendants exists in this district wherein the Defendants are found by either regularly conducting business or maintaining substantial contacts.

## THE PARTIES

5.  Plaintiff BLET is an unincorporated labor organization that is the collective bargaining representative for locomotive engineers employed by Defendant Norfolk Southern Ry. Co. Its principal place of business is located at 1370 Ontario Street, Mezzanine, Cleveland, Ohio 44113.

6.  This action is brought by the BLET in its own behalf and for and in the interests of all BLET-represented employees in the service of defendants.

7.  Defendant Norfolk Southern Railway Company ("NSR") is a "carrier" within the meaning of the Railway Labor Act, 45 U.S.C. § 151, *et seq.* It employs operating craft employees represented by the BLET, and regularly conducts business and maintains trackage in this judicial district. NSR is incorporated under the laws of the Commonwealth of Virginia, and is a wholly-owned subsidiary of Defendant Norfolk Southern Corporation.

8.  Defendant Norfolk Southern Corporation ("NSC") is a transportation holding company incorporated under the laws of the Commonwealth of Virginia. It owns all of the common stock of NSR. It regularly conducts business in this judicial district. Rail operations of

NSR, including labor relations matters, are coordinated at the holding company level by the NSC Vice Chairman and Chief Operating Officer. NSC charges NSR a fee for management services it performs. Hereinafter Defendants NSR and NSC shall collectively be referred to as "NS" or "the Carrier."

## FACTS

9. The BLET is the certified bargaining representative of locomotive engineer employees of defendants pursuant to a certification issued by the National Mediation Board on June 23, 1989 in Case No. R-5888. Representation of locomotive engineers on the NS is carried out by General Committees of the BLET, which are headed by BLET General Chairmen.

10. The United Transportation Union ("UTU"), an unincorporated labor organization, is the exclusive bargaining representative of trainmen employed by defendants. Representation of trainmen on the NS is carried out by General Committees of the UTU, which are headed by UTU General Chairmen.

11. On March 9, 2005, H. R. Mobley, Assistant Vice President of Labor Relations for NS, wrote to the General Chairmen of the BLET and UTU on the NS regarding "the ongoing recruitment efforts" of those organizations. Mobley announced that, "Recruitment and/or organizing among agreement employees on the private property of NS, falls outside our established practice, and will not be permitted." In announcing this blanket prohibition on all union recruitment and/or organizing activities by employees, the Carrier cited no special circumstances or considerations that would make such a policy necessary in order to maintain production or discipline on the property.

12. The issuance of the March 9, 2005 letter from the Carrier to the General Chairmen of the BLET and UTU coincided with the preliminary stages of an organizing

campaign initiated by the BLET and its members to aid organizational efforts among trainmen on the NS.

13. The Carrier's March 9, 2005 announcement of its unconditional policy prohibiting all union recruitment and/or organizing activities by employees on its property was intended to and has had a chilling effect on the organizational rights of BLET-represented employees and others employed by the Carrier.

14. On March 24, 2005, G. A. Myers, a BLET member and locomotive engineer employed by the Carrier, was reprimanded by a Carrier official for engaging "in organizing activity on Norfolk Southern property." The prohibited "organizing activity" that Myers was accused of was speaking to a fellow employee concerning which union he would support should a representation election occur on the NS.

15. On April 20, 2005, T. J. Curran, a BLET member and locomotive engineer employed by the Carrier, was ordered to attend a formal investigation by the Carrier to determine his responsibility for, *inter alia*, "violating previous instructions issued by Superintendent of Terminals J. L. Moore not to engage in union organizing activity in the workplace."

16. The intent and effect of the reprimand issued to G. A. Myers and notice of investigation issued to T. J. Curran was to chill and interfere with these employees' right to join, organize, or assist in organizing the labor organization of their choice.

17. On or about May 3, 2005, a Superintendent's Notice was posted on the NS Georgia Division stating, in pertinent part: "Solicitation of any type, including recruitment and/or union organizing among agreement employees, is prohibited on the private property of the Norfolk Southern." Similar notices were posted on all the Divisions of the NS. Like the previous policy announcement to union officials on March 9, 2005, the notices directed to

employees by the Carrier on its various Divisions made no reference to any special circumstances or considerations that would make such a policy necessary in order to maintain production or discipline.

18. The May 3, 2005, Superintendent's Notice posted on the NS Georgia Division and similar notices posted on all other Divisions of the Carrier were intended to and have had a chilling effect on the organizational rights of BLET-represented employees and others employed by the Carrier.

19. On May 20, 2005, H.R. Mobley issued a second letter the General Chairmen of the BLET and UTU this time referencing "the campaign that is apparently underway with respect to the representation of train service employees on the NS." Mobley went on to write: "We will continue our policy of not permitting organizational activities on the private property of the NS." As with the previous promulgations of its unconditional policy prohibiting all union solicitation, recruitment or organizing activities by employees, the Carrier offered no special circumstances or considerations that would make the policy necessary in order maintain production or discipline.

20. In response to the May 20, 2005 letter from the Carrier, Paul C. Thompson, UTU International President, issued an open letter also dated May 20, 2005 to UTU Local Officers and Local Chairpersons on the NS requesting that UTU members report any union activity on the NS property by BLET members to UTU officials. Thompson requested that UTU members report any violations of the Carrier's policy "so that appropriate action may be taken with NS officials." The "appropriate action" referenced in the letter from the UTU is in obvious reference to the reprimands the Carrier has issued to employees represented by the BLET for violation of its

unconditional policy against union solicitation, recruitment or organizing activities on its property.

21. On May 26, 2005, BLET-represented employees of the Carrier officially began soliciting authorization cards from trainmen employed by the Carrier. If sufficient authorization cards are signed and collected, they will be used to initiate a representation dispute among the trainmen.

22. The Carrier's enforcement of its policy prohibiting all union solicitation, recruitment and organizing activities by employees on its property is intended to and has interfered with employees' ability to solicit and receive authorization cards.

23. The Carrier's enforcement of its policy also interferes with employees' right to effectively communicate with one another regarding self-organization at the jobsite.

24. There are no special circumstances that make Carrier's policy of prohibiting all organizing activities on NS property necessary in order to maintain production or discipline.

25. The intended and actual effect of the Carrier's policy is to chill all union organizational activities by employees, including union recruitment and solicitation between employees.

## COUNT ONE
(Violation of Section 2, Third of the Act, 45 U.S.C. § 152, Third)

26. The allegations of paragraphs 1 through 25 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

27. Section 2, Third of the Act, 45 U.S.C. § 152, Third, provides that carriers shall not "interfere with, influence, or coerce" employees in their choice of represenatative.

28.   The defendants' policy of prohibiting all organizing activities on NS property interferes with the rights of NS employees to designate their choice of representative, as guaranteed by Section 2, Third of the Railway Labor Act, 45 U.S.C. § 152, Third.

## COUNT TWO
(Violation of Section 2, Fourth of the Act, 45 U.S.C. § 152, Fourth)

29.   The allegations of paragraphs 1 through 28 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

30.   Section 2, Fourth of the Act, 45 U.S.C. § 152, Fourth, provides in pertinent part:

"Employees shall have the right to organize and bargain collectively through representatives of their own choosing. . . . No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, . . . or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization . . . ."

31.   The defendants' policy of prohibiting all organizing activities on NS property interferes with the rights of NS employees to join, organize, or assist in organizing the labor organization of their choice, as guaranteed by Section 2, Fourth of the Railway Labor Act, 45 U.S.C. § 152, Fourth.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff respectfully requests that the Court grant the following relief:

(A)   A declaratory judgment that the Defendants' policy of prohibiting all union organizing activities on its property violates the Railway Labor Act and is void *ab initio*;

(B)   Preliminary and permanent injunctive relief prohibiting enforcement of Defendants' policy of prohibiting all union solicitation, recruitment and/or organizing activities on its property against any employee of Defendants;

(C)   An Order requiring Defendants' to rescind all letters, notices or other publications setting forth its unlawful policy of prohibiting all union solicitation, recruitment and/or organizing activities on its property, and requiring Defendants to conspicuously post copies of the Court's injunctive order at each of the Defendants' facilities and locations in the United States, which are regularly frequented by operating craft employees, for a period of sixty (60) days;

(D)   An award of the Plaintiffs' attorneys fees and costs incurred in bringing this action; and

(E)   Such other and further relief as the Court deems just and proper.


Dated: June 14, 2005.                    Respectfully submitted,

                                         _____
                                         Roland P. Wilder, Jr. (D.C. Bar# 69609)
                                         Joshua D. McInerney (D.C. Bar# 479471)
                                         Baptiste & Wilder, P.C.
                                         1150 Connecticut Ave., N.W., Suite 500
                                         Washington, D.C. 20036
                                         (202) 223-0723
                                         (202) 223-9677 [fax]
                                         rpwilderjr@bapwild.com
                                         jmcinerney@bapwild.com

                                         Attorneys for Plaintiff BLET