# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BROTHERHOOD OF LOCOMOTIVE
ENGINEERS AND TRAINMEN,

CASE NUMBER  1:05CV01188

JUDGE: Richard W. Roberts

Plaintiff,

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 06/14/2005

v.

NORFOLK SOUTHERN RAILWAY CO., and       )
NORFOLK SOUTHERN CORP.,                 )
                                        )
                    Defendants.         )
                                        )
_____)

## APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF

### INTRODUCTION

This is an action for injunctive and declaratory relief under the Railway Labor Act ("the RLA"), 45 U.S.C. § 151, *et seq.* The plaintiff, Brotherhood of Locomotive Engineers and Trainmen ("BLET"), is acting in its capacity as statutory bargaining representative for the locomotive engineers of the subsidiaries of Norfolk Southern Corporation, including Norfolk Southern Railway Company (collectively "NS" or "the Carrier").

At issue in this case is the Carrier's unconditional prohibition of all union solicitation, recruitment or organizing activities by employees on its property. While union solicitation and organizing rights of employees in the workplace are not absolute, there are no special circumstances present on the NS that would make the blanket prohibition imposed by the Carrier necessary in order to maintain production or discipline. Accordingly, the Carrier's policy is an unreasonable and unlawful restraint on the right of employees to organize and form a labor union, as guaranteed by Section 2, Third and Fourth of the RLA, 45 U.S.C. 152, Third and

Fourth. Therefore, a preliminary injunction enjoining enforcement of the Carrier's policy is appropriate to protect the rights of association and expression in union activities guaranteed under the RLA.

## STATEMENT OF FACTS

### A.    *The Parties and their Relationship*

Plaintiff BLET is the certified bargaining representative of locomotive engineers employed by defendants pursuant to a certification issued by the National Mediation Board on June 23, 1989 in Case No. R-5888. *See* <u>Norfolk Southern Corp.</u>, 16 N.M.B. 375 (1989). Defendant Norfolk Southern Railway Company ("NSR") is a "carrier" within the meaning of the RLA, 45 U.S.C. § 151, *et seq.* (Brennan Decl. ¶ 3)  NSR is a wholly-owned subsidary of Defendant Norfolk Southern Corporation ("NSC"), which in turn is a transportation holding company that owns all of the common stock of NSR. (<u>Id.</u> ¶ 4)  Rail operations of NSR, including labor relations matters, are coordinated at the holding company level by the NSC Vice Chairman and Chief Operating Officer. (<u>Id.</u>)

### B.    *The Carrier's Announcement and Repeated Promulgation of Its Blanket Policy Prohibiting All Union Solicitation, Recruitment or Organizing Activities by Employees On Its Property.*

On March 9, 2005, H.R. Mobley, Assistant Vice President of Labor Relations for NS, wrote to the General Chairmen of the BLET and United Transportation Union ("UTU")[1], regarding "the ongoing recruitment efforts" of those organizations. (Brennan Decl. ¶ 6).  In the letter, Mobley announced, "Recruitment and/or organizing among agreement employees on the private property of NS, falls outside our established practice, and will not be permitted." (<u>Id.</u>)  In announcing this blanket prohibition on all union recruitment and/or organizing activities by

---

[1]    The United Transportation Union ("UTU") is the certified representative of trainmen employed on the NS. (Brennan Decl ¶ 5)

employees, the Carrier cited no special circumstances or considerations that would make such a policy necessary in order to maintain production or discipline on the property. (Id.)

The issuance of the March 9, 2005 letter from the Carrier to the General Chairmen of the BLET and UTU coincided with the first stages of an organizing campaign initiated by the BLET and its members seeking to aid organizational efforts of trainmen on the NS. (Id. ¶ 7)  The Carrier's March 9, 2005 announcement of its unconditional policy prohibiting all union recruitment and/or organizing activities by employees on its property was intended to and has had a chilling effect on the organizational rights of BLET-represented employees and others employed by the Carrier. (Id. ¶ 8)

On March 24, 2005, G. A. Myers, a BLET member and locomotive engineer employed by the Carrier, was reprimanded by a Carrier official for engaging "in organizing activity on Norfolk Southern property." (Id. ¶ 9) The prohibited "organizing activity" that Myers was accused of was speaking to a fellow employee concerning which union he would support should a representation election occur on the NS. (Id.)  On April 20, 2005, T. J. Curran, a BLET member and locomotive engineer employed by the Carrier, was ordered to attend a formal investigation by the carrier to determine his responsibility for, *inter alia*, "violating previous instructions issued by Superintendent of Terminals J. L. Moore not to engage in union organizing activity in the workplace." (Id. ¶ 10)  The intent and effect of the reprimand issued to G. A. Myers and notice of investigation issued to T. J. Curran was to chill and interfere with these employees' right to join, organize, or assist in organizing the labor organization of their choice. (Id. ¶ 11)

On or about May 3, 2005, a Superintendent's Notice was posted on the NS Georgia Division stating, in pertinent part: "Solicitation of any type, including recruitment and/or union

organizing among agreement employees, is prohibited on the private property of the Norfolk Southern." (Id. ¶ 12)  Similar notices were posted on all the Divisions of the NS. (Id.)  Like the previous announcement of its policy on March 9, 2005, the notices posted by the Carrier on its Georgia Division made no reference to any special circumstances or considerations that would make such a policy necessary in order to maintain production or discipline. (Id.)  The May 3, 2005, Superintendent's Notice posted on the NS Georgia Division and similar notices posted on all other Divisions of the Carrier were intended to and have had a chilling effect on the organizational rights of BLET-represented employees and others employed by the Carrier. (Id. ¶ 13)

On May 20, 2005, H.R. Mobley issued a second letter the General Chairmen of the BLET and UTU this time referencing "the campaign that is apparently underway with respect to the representation of train service employees on the NS." (Id. ¶ 14)  Mobley went on to write: "We will continue our policy of not permitting organizational activities on the private property of the NS." (Id.)  As with the previous promulgations of its unconditional policy prohibiting all union solicitation, recruitment or organizing activities by employees, the Carrier offered no special circumstances or considerations that would make the policy necessary in order maintain production or discipline. (Id.)

In response to the May 20, 2005 letter from the Carrier, Paul C. Thompson, UTU International President, issued an open letter also dated May 20, 2005 to UTU Local Officers and Local Chairpersons on the NS requesting that UTU members report any union activity on the NS property by BLET members to UTU officials. (Id. ¶ 15)  Thompson requested that UTU members report any violations of the Carrier's policy "so that appropriate action may be taken with NS officials." (Id.)  The "appropriate action" referenced in the letter from the UTU is in

obvious reference to the reprimands the Carrier has issued to employees represented by the BLET for violation of its unconditional policy against union solicitation, recruitment or organizing activities on its property. (Id.)

On May 26, 2005, BLET-represented employees of the Carrier officially began soliciting authorization cards from trainmen employed by the Carrier.  If sufficient authorization cards are signed and collected, they will be used to initiate a representation dispute among the trainmen. (Id. ¶ 16)  The Carrier's enforcement of its policy prohibiting all union solicitation, recruitment and organizing activities by employees on its property is intended to and has interfered with employees' ability to solicit and receive authorization cards.  (Id. ¶ 17)

## ARGUMENT

I.      **THIS COURT IS EMPOWERED TO GRANT PRELIMINARY INJUNCTIVE RELIEF IN ORDER TO VINDICATE EMPLOYEES' STATUTORILY PROTECTED ORGANIZATIONAL RIGHTS.**

On an application for a preliminary injunction, the district court must consider whether:

(1) the party seeking the injunction has a substantial likelihood of success on the merits;
(2) the party seeking the injunction will be irreparably injured if relief is withheld;
(3) an injunction will not substantially harm other parties; and
(4) an injunction would further the public interest.

CSX Transportation, Inc. v. Williams, No. 05-5131, 2005 U.S. App. LEXIS 7604, *7-8 (D.C. Cir. May 3 2005).  The test is flexible, and "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." Id., *quoting* Cityfed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995).

In the instant case, preliminary injunctive relief is appropriate to vindicate employees' organizational rights under Section 2, Third and Fourth of the RLA. *See* Texas & N.O.R.R. v. Brotherhood of Ry. & S.S. Clerks, 281 U.S. 548, 571 (1930) (enforcing by injunction the RLA's

prohibition against anti-union coercive measures by carrier); *see also* <u>Arcamuzi v. Continental Air Lines, Inc.</u>, 819 F.2d 935, 937 (9th Cir. 1986) (holding injunctive relief is available to protect employees' organizational rights under the RLA).

Further, the Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq.*, does not apply to deprive this court of jurisdiction to issue the requested injunctive relief since the Carrier's policy is an unreasonable and unlawful restraint on the right of employees to organize and form a labor union, as guaranteed by Section 2, Third and Fourth of the RLA. The specific provisions of the RLA control over the general limitations on federal court jurisdiction established in Norris-LaGuardia. *See* <u>Pittsburgh & Lake Erie R.R. v. Railway Labor Executives Ass'n</u>, 491 U.S. 490, 513 (1989); <u>Burlington Northern R.R. Co. v. Brotherhood of Maintenance of Way Employees</u>, 481 U.S. 429, 445-446 (1987).

II.   **THE CARRIER'S BLANKET POLICY PROHIBITING ALL UNION SOLICITATION, RECRUITMENT AND ORGANIZING ACTIVITIES BY EMPLOYEES ON ITS PROPERTY UNREASONABLY AND UNLAWFULLY INTERFERES WITH EMPLOYEES' RIGHT OF SELF-ORGANIZATION PROTECTED UNDER THE RAILWAY LABOR ACT.**

The issue presented to the Court in this Application for Preliminary Injunction is whether the Carrier's unconditional policy prohibiting all union solicitation, recruitment and organizing activities by employees on its property unlawfully interferes employees' organizational rights protected under Section 2, Third and Fourth of the RLA, 45 U.S.C. 152, Third and Fourth. Section 2, Third of the RLA, provides in pertinent part:

> Representatives, for the purpose of this Act shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives.

and Section 2, Fourth provides in such part:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing. . . . No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, . . . or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization . . . .

In construing these provisions the RLA, courts often look to cases interpreting Section 8(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. 185(a).[2] *See, e.g.,* Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 383 (1969); Scott v. American Airlines, Inc., 488 F. Supp 415, 419 (E.D.N.Y. 1980); Adams v. Federal Express Corp., 470 F. Supp 1356, 1363 (W.D. Tenn. 1979).

Under the NLRA, it is well established that an employer's unconditional and unqualified policy prohibiting all union solicitation or organizing activities by employees on its property is presumptively unlawful, absent evidence that such a rule is necessary in order to maintain production or discipline. *See* Republic Aviation Corp. v. NLRB, 324 U.S. 793, 798-99 (1945); NLRB v. Magnavox Co. of Tennessee, 415 U.S. 322, 324-25 (1974); Eastex, Inc. v. NLRB, 437 U.S. 556, 572-73 (1978); Beth Israel Hospital v. NLRB, 437 U.S. 483, 491 (1978). These decisions are all premised upon the principal that the right of employees to self-organize without interference or coercion "necessarily encompasses the right effectively to communicate with one another regarding self-organization at the jobsite." Beth Israel Hospital, 437 U.S. at 491. The importance of freedom of communication among employees to the free exercise of

---

[2]  In language similar to Section 2, Third and Fourth of the RLA, Section 8(a) of the NLRA, provides in pertinent part:

> It shall be an unfair labor practice for an employer (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7 [the right to self-organization, to form, join, or assist labor organizations]; (2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it; . . ."

organizational rights is not limited to such rights guaranteed under the NLRA, *see* <u>Central Hardware v. NLRB</u>, 407 U.S. 539, 542-43 (1972), but is equally important to the rights of self-organization guaranteed by Section 2, Third and Fourth of the RLA.

In <u>Scott v. American Airlines</u>, 488 F. Supp at 420, the Court found a carrier's policy prohibiting the wearing of union insignia to be unlawful interference with employees' right to organize in violation of Section 2, Third and Fourth of the RLA. <u>Scott</u> cited and relied heavily upon <u>Adams v. Federal Express</u>, 470 F. Supp at 1363, which in addressing a similar prohibition held, "employees have the right to visibly demonstrate their support or opposition to a particular bargaining representative absent some exceptional reason for curtailing such expressions." Although these cases dealt with specific and narrowly tailored prohibitions on the wearing of union insignia, they are instructive in assessing the lawfulness of the overbroad and unconditional prohibition on all union solicitation and organizing activities imposed by the NS on its employees. Where a carrier's policy interferes with employees' free choice of bargaining representative or freedom to join, organize, or assist in organizing the labor organization, such policies are unlawful and in violation of Section 2, Third and Fourth of the RLA. (<u>Id.</u>)

In the case at bar, the Carrier's policy that is sought to be enjoined prohibits absolutely all communication, solicitation and other organizing activities among employees on its property, without exception as to the time, manner or location of the activities. In promulgating the policy, the Carrier has not cited to or offered any evidence of special circumstances that make the blanket prohibition on organizing activities necessary in order to maintain production or discipline. Indeed, no such special circumstances exist on the NS. (Brennan Decl. ¶ 9) Under these circumstances, the policy is a *per se* violation of Section 2, Third and Fourth of the RLA in

8

that it unreasonably interferes with employees' right to designate their choice of representative and right to join, organize, or assist in organizing the labor organization of their choice.

In light of the overwhelming legal precedent holding that blanket prohibitions on organizing activities by employees such the one at issue here constitute unlawful interference with employees' right of self-organization, the BLET's likelihood of success on the merits of this case is great. Therefore, the first element the Court must consider in determining whether to grant the BLET the preliminary injunctive relief it seeks is satisfied.

Turning to the question of irreparable injury, where a likelihood of success on the merits has been established and there is no adequate remedy available at law, injunctive relief must be granted. *See* National R.R. Passenger Corp. v. United Transp. Union, 832 F. Supp. 7, 11 (D.D.C. 1993). In the instant matter, there is no question that the coercive and inhibitory effects of the Carrier's unlawful policy on employees' organizational rights secured by Section 2, Third and Fourth of the RLA cannot be remedied by money. Arcamuzai, 891 F.2d at 938. Such injury is by definition irreparable. Moreover, in light of the strong likelihood that the Carrier's policy will be found to unlawfully interfere with employees' statutory rights under the RLA, an injunction of the policy may issue even if the irreparable injury suffered by employees is weak. *See* Cityfed Fin. Corp., 58 F.3d at 747.

As for any possible harm suffered by the Carrier by issuance of a preliminary injunction, it is unclear how permitting employees to engage in union organizing activities would result in harm to the NS. Certainly, the Carrier has not cited any legitimate concerns in its issuance of letters and notices setting forth the policy that would make the policy necessary. On the other hand, it is in the public interest to enjoin the Carrier's unlawful policy, as "[t]he RLA statutorily protects the right of association and expression in union activities from interference by

employers. It is the duty of the courts to give effect to that purpose when called upon to do so."
Arcamuzi, 819 F.2d 939.

## CONCLUSION

For the reasons stated above, the Court should issue a preliminary injunction enjoining the Carrier from enforcing its unconditional policy prohibiting all union solicitation, recruitment and organizing activities by employees on its property. This Court has jurisdiction to enjoin the policy to protect employees' organizational rights under Section 2, Third and Fourth of the RLA, 45 U.S.C. § 152, Third and Fourth. Given the Carrier's violation of the RLA, the Norris-LaGuardia Act, 29 U.S.C. 101, *et seq.*, does not preclude issuance of the requested injunctive relief. Therefore, this Court may issue an order granting the requested relief against the defendants.

Dated: June 14, 2005.

Respectfully submitted,

Roland P. Wilder, Jr. (D.C. Bar# 69609)
Joshua D. McInerney (D.C. Bar# 479471)
Baptiste & Wilder, P.C.
1150 Connecticut Ave., N.W., Suite 500
Washington, D.C. 20036
(202) 223-0723
(202) 223-9677 [fax]
rpwilderjr@bapwild.com
jmcinerney@bapwild.com

Attorneys for Plaintiff BLET

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BROTHERHOOD OF LOCOMOTIVE        )
ENGINEERS AND TRAINMEN,          )
                                 )
                Plaintiff,       )
                                 )        Civil Action No. _____
v.                               )
                                 )
NORFOLK SOUTHERN RAILWAY CO. and )
NORFOLK SOUTHERN CORP.,          )
                                 )
                Defendants.      )
_____)

## DECLARATION OF THOMAS C. BRENNAN, ESQ.

Thomas C. Brennan, Esq., hereby declares:

1.    I am Staff Counsel with the National Division of the Brotherhood of Locomotive

Engineers and Trainmen, a Division of the Rail Conference-International Brotherhood of

Teamsters.  I am over eighteen years old and have personal knowledge of the matters set forth in

this declaration.

2.    Plaintiff BLET is an unincorporated labor organization with its principal place of

business located at 1370 Ontario Street, Mezzanine, Cleveland, Ohio 44113.  The BLET is the

certified bargaining representative of locomotive engineer employees of defendants pursuant to a

certification issued by the National Mediation Board on June 23, 1989 in Case No. R-5888.

Attached to this Declaration as Exhibit 1 is a true and accurate copy of said certification.

3.    Defendant Norfolk Southern Railway Company ("NSR") is a "carrier" within the

meaning of the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, incorporated under the laws of the

Commonwealth of Virginia.  It employs employees represented by the BLET.  The Carrier

regularly conducts business and maintains trackage in this judicial district. It is a wholly-owned subsidiary of Defendant Norfolk Southern Corporation.

4.     Defendant Norfolk Southern Corporation ("NSC") is a transportation holding company incorporated under the laws of the Commonwealth of Virginia. It owns all of the common stock of NSR. It regularly conducts business in this judicial district. Rail operations of NSR, including labor relations matters, are coordinated at the holding company level by the NSC Vice Chairman and Chief Operating Officer. Hereinafter Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation will be collectively referred to as "NS."

5.     The United Transportation Union ("UTU"), an unincorporated labor organization, is the certified representative of trainmen on the NS.

6.     By letter dated March 9, 2005 and addressed to the General Chairmen of the BLET and United Transportation Union, H.R. Mobley, Assistant Vice President of Labor Relations for NS, stated, in part, "Recruitment and/or organizing among agreement employees on the private property of NS, falls outside our established practice, and will not be permitted.". Attached to this Declaration as Exhibit 2 is a true and accurate copy of said letter.

7.     The issuance of the March 9, 2005 letter from the Carrier to the General Chairmen of the BLET and UTU coincided with the first stages of an organizing campaign initiated by the BLET and its members seeking to generate a representation dispute among trainmen on the NS.

8.     The Carrier's March 9, 2005 announcement of its unconditional policy prohibiting all union recruitment and/or organizing activities by employees on its property was intended to and has had a chilling effect on the organizational rights of BLET-represented employees and others employed by the Carrier.

2

9.    On March 24, 2005, G. A. Myers, a BLET member and locomotive engineer employed by the Carrier, was reprimanded by a Carrier official for engaging "in organizing activity on Norfolk Southern property." The prohibited "organizing activity" that Myers was accused of was speaking to a fellow employee concerning which union he would support should a representation election occur on the NS. Attached to this Declaration as Exhibit 3 is a true and accurate copy of the reprimand issued to G. A. Myers.

10.    On April 20, 2005, T. J. Curran, a BLET member and locomotive engineer employed by the Carrier, was ordered to attend a formal investigation by the carrier to determine his responsibility for, *inter alia,* "violating previous instructions issued by Superintendent of Terminals J. L. Moore not to engage in union organizing activity in the workplace." Attached to this Declaration as Exhibit 4 is a true and accurate copy of the notice of investigation issued to T. J. Curran.

11.    The intent and effect of the reprimand issued to G. A. Myers and notice of investigation issued to T. J. Curran was to chill and interfere with these employees' right to join, organize, or assist in organizing the labor organization of their choice.

12.    On or about May 3, 2005, a notice was posted on the NS Georgia Division stating, in pertinent part: "Solicitation of any type, including recruitment and/or union organizing among agreement employees, is prohibited on the private property of the Norfolk Southern." Similar notices were posted on all the Divisions of the NS. Like the previous announcement of its policy on March 9, 2005, the notices posted by the Carrier on its various Divisions made no reference to any special circumstances or considerations that would make such a policy necessary in order to maintain production or discipline. Attached to this Declaration as Exhibit 5 is a true and accurate copy of the May 3, 2005, notice posted on the NS Georgia Division.

3

13.     The May 3, 2005, Superintendent's Notice posted on the NS Georgia Division and similar notices posted on all other Divisions of the Carrier were intended to and have had a chilling effect on the organizational rights of BLET-represented employees and others employed by the Carrier.

14.     On May 20, 2005, H.R. Mobley issued a second letter the General Chairmen of the BLET and UTU this time referencing "the campaign that is apparently underway with respect to the representation of train service employees on the NS." Mobley reiterated the Carrier's position of neutrality in with respect to "organizational activities," but went on to write: "We will continue our policy of not permitting organizational activities on the private property of the NS." As with the previous promulgations of its unconditional policy prohibiting all union solicitation, recruitment or organizing activities by employees, the Carrier offered no special circumstances or considerations that would make the policy necessary in order maintain production or discipline. Attached to this Declaration as Exhibit 6 is a true and accurate copy of said letter.

15.     In response to the May 20, 2005 letter from H.R. Mobley the General Chairmen of the BLET and UTU, Paul C. Thompson, UTU International President, issued a open letter dated May 20, 2005 to UTU Local Officers and Local Chairpersons on the NS requesting that UTU members report any union activity on the NS property by BLET members to UTU officials "so that appropriate action may be taken with NS officials." Attached to this Declaration as Exhibit 7 is a true and accurate copy of said letter.

16.     On May 26, 2005, BLET-represented employees of the Carrier officially began soliciting authorization cards from trainmen employed by the Carrier. If sufficient authorization cards are signed and collected, they will be used to initiate a representation dispute among the trainmen.

17.   The Carrier's enforcement of its policy prohibiting all union solicitation, recruitment and organizing activities by employees on its property is intended to and has interfered with employees' ability to solicit and receive authorization cards.

18.   There are no special circumstances that make defendants' policy of prohibiting all organizing activities on NS property necessary in order to maintain production or discipline. Nor have defendants cited any special circumstances in their repeated promulgation of the policy.

19    Locomotive engineer employees of the NS have been reprimanded by the Carrier for violation of its policy against recruitment and union organizing activities on its property.

20.   Section 2, Third of the Act, 45 U.S.C. § 152, Third, provides in pertinent part:

"Representatives, for the purpose of this Act shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives."

and Section 2, Fourth of the Act, 45 U.S.C. § 152, Fourth, provides in pertinent part:

"Employees shall have the right to organize and bargain collectively through representatives of their own choosing. . . . No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, . . . or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization . . . ."

The defendants' policy of prohibiting all union organizing activities on its property interferes with the rights of NS employees to organize and form a labor union to represent them, as guaranteed by Section 2, Third and Fourth of the Railway Labor Act, 45 U.S.C. § 152, Third and Fourth.

21.   I have reviewed the allegations asserted in the IBT's complaint in this action and verify they are true and correct to the best of my knowledge, information and belief.

5

I hereby declare and state, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 13th day of June 2005.

_Thomas C. Brennan_

Thomas C. Brennan

Service: Get by LEXSEE®
Citation: 16 nmb 375

*16 NMB 375, \*; 16 NMB No. 105;*
*1989 NMB LEXIS 55, \*\**

In the Matter of the REPRESENTATION OF EMPLOYEES of The Railroad subsidiaries of the NORFOLK SOUTHERN CORP. -- Locomotive Engineers

Case No. R-5888

NATIONAL MEDIATION BOARD

16 NMB 375; 16 NMB No. 105; 1989 NMB LEXIS 55

June 23, 1989

**CORE TERMS:** Railway Labor Act, investigate, subsidiaries, railroad, assigned, election, craft

**OPINION:**
**[\*\*1]**

**[\*375]** CERTIFICATION

The services of the National Mediation Board were invoked by the United Transportation Union (UTU), on March 27, 1989, to investigate and determine who may represent for the purposes of the Railway Labor Act, as provided by Section 2, Ninth, thereof, personnel described as "Engineers", employees of the "Norfolk Southern railroad subsidiaries".

At the time this application was received, the majority of these employees were represented by the Brotherhood of Locomotive Engineers (BLE).

The Board assigned Mediator Samuel J. Cognata to investigate.

FINDINGS

The investigation disclosed that a dispute existed among the craft or class of Locomotive Engineers, and by direction of the Board the Mediator was instructed to conduct an election by secret ballot to determine the employees' representation choice.

The following is the result of the election as reported by Mediator Cognata, who was assigned to count the ballots in this case.

**[\*376]** Number of Employees Voting:

| | BLE | UTU | VOID BALLOTS | ELIGIBLE VOTERS | OTHER VOTES |
|---|---|---|---|---|---|
| Locomotive Engineers | 1553 | 1172 | 6 | 2895 | \* 1 |

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

\* 1 write-in vote for the United Auto Workers.



Case 1:05-cv-01188-RWR   Document 2   Filed 06/14/2005   Page 18 of 27

Page 2 of 2

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**2]

The National Mediation Board further finds that the Carrier and employees in this case are, respectively, a Carrier and employees within the meaning of the Railway Labor Act, as amended; that this Board has jurisdiction over the dispute involved herein; and that the interested parties, as well as the Carrier, were given due notice of the Board's investigation.

CERTIFICATION

NOW, THEREFORE, in accordance with Section 2, Ninth, of the Railway Labor Act, as amended, and based upon its investigation pursuant thereto, the National Mediation Board certifies that the Brotherhood of Locomotive Engineers, has been duly designated and authorized to represent for the purposes of the Railway Labor Act, as amended, the craft or class of Locomotive Engineers, employees of the railroad subsidiaries of the Norfolk Southern Corporation.

Service: **Get by LEXSEE®**
Citation: **16 nmb 375**
View: Full
Date/Time: Monday, June 6, 2005 - 11:10 AM EDT

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

H. R. Mobley
Assistant Vice President
Labor Relations
(757) 829-2425

March 9, 2005

RL-1

Mr. W. E. Knight, General Chairman
Brotherhood of Locomotive Engineers
and Trainmen
P. O. Box 279, South Street
Wheelersburg, Ohio 45694

Mr. R. H. Linsey, General Chairman
Brotherhood of Locomotive Engineers
and Trainmen
1807 Elmwood Avenue, Suite 116
Buffalo, New York 14207

Mr. R. C. Wallace, General Chairman
Brotherhood of Locomotive Engineers
and Trainmen
P. O. Box 16039
Asheville, North Carolina 28816

Mr. B. S. Daniel, General Chairman
United Transportation Union
P. O. Box 530
Gordon, Georgia 31031

Mr. P. E. Emart, General Chairman
United Transportation Union
427 West Broadway Avenue
Maryville, Tennessee 37801

Mr. J. A. Houk, General Chairman
United Transportation Union
2823 Williamson Road, Suite 5
Roanoke, Virginia 24012

Mr. L. P. King, Jr., General Chairman
United Transportation Union
145 West Campbell Avenue, Suite 207
Roanoke, Virginia 24011

Mr. D. G. Strunk, Jr., General Chairman
United Transportation Union
817 Kilbourne Street
Bellevue, Ohio 44811

PLAINTIFF'S
EXHIBIT

Gentlemen:

This is in regard to the ongoing recruitment efforts by the Brotherhood of Locomotive Engineers
and Trainmen (BLET) and the United Transportation Union (UTU).

As you know, Norfolk Southern (NS) has, as required by the Railway Labor Act, maintained a
policy of strict neutrality in connection with inter-union representation activities. NS will not
interfere in any way with legitimate activities by unions and will remain absolutely neutral with
respect to such matters.

The Railway Labor Act provides that employees have the right to decide whether to be
represented for purposes of collective bargaining, and, if so, by whom. Railroad officials may
not interfere in any way with employees' rights to choose to have (or not to have) a labor
organization represent them.

Mr. W. E. Knight, et al
March 9, 2005
RL-1
Page 2


Norfolk Southern fully acknowledges the right of employees to organize and bargain collectively through a representative of their choosing, and the railroad will in no way deny, question or interfere with the rights of its employees to join, organize or assist in organizing the labor organization of their choice.

Further, consistent with the provisions of the Railway Labor Act and the practice on this property, union activities in the work place by agreement employees and their representatives have been limited to handling claims, grievances, disciplinary investigations and maintenance of a bulletin board to communicate routine, non-controversial matters with those you represent to the extent necessary, and not to interfere with safety or the efficiency of the work operations. Recruitment and/or organizing among agreement employees on the private property of NS falls outside our established practice, and will not be permitted.

We trust our relationship will continue to exhibit the cooperation and understanding in the future that has helped make Norfolk Southern a safe and successful railroad. We thank you in advance for your assistance in this matter.

/s/ H. R. Mobley

Roanoke, VA – March 24, 2005

**CERTIFIED MAIL 7004 1350 0002 2639 1337**
**RETURN RECEIPT REQUESTED**

Mr. G. A. Myers
3314 Chestnut Mountain
Vinton, Virginia 24179-1706

Dear Mr. Myers:

Reference our conversation on March 21, 2005, concerning a complaint from Conductor Poindexter involving an allegation of unwelcome discussion regarding choice of a representative that occurred on the property.

After receiving this complaint, I interviewed you and Conductor Poindexter separately. In short, you admitted that you questioned Conductor Poindexter concerning which union he would support should a representation election occur on Norfolk Southern. Conductor Poindexter indicated that he took exception to being questioned in this manner while at work.

You are cautioned that you must not engage in such organizing activity on Norfolk Southern property. I have attached a letter from H. R. Mobley, Assistant Vice President Labor Relations, addressed to all BLET and UTU general chairmen outlining Norfolk Southern's policy with regard to organizing activity on the property. That advice is equally applicable to all unions. If you have any questions concerning this letter or our discussion, please feel free to contact me.

Very truly yours,

Chad Hitt

Chad Hitt
Trainmaster

Attachment

cc: W. E. Knight


PLAINTIFF'S
EXHIBIT
3



## NOTICE OF INVESTIGATION

April 20, 2005

FILE: P-FW
LOG: APR19849

**DHL EXPRESS – SIGNATURE REQUIRED**
**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**
T. J. Curran, Engineer 0766201  (7004 1350 0005 7821 6906)
1766 Eggert Road
Amherst, NY 14226-2351

T. J. Curran:

Pursuant to your Collective Bargaining Agreement, arrange to attend a formal investigation at 10:00 AM, April 22, 2005, to be held in the Superintendent's Conference Room, 300 Kennedy Road, Cheektowaga, NY 14227.

The purpose of this Investigation is to determine the facts and place your responsibility, if any, in connection with:

*Your improper use of corporate assets when you used the NS MEMO system to distribute union organizing information, compromising Norfolk Southern's policy of strict neutrality in connection with inter-union representation activities at approximately 10:19 PM, April 14, 2005, and violating previous instructions issued by Superintendent of Terminals J. L. Moore not to engage in union organizing activity in the workplace.*

At this investigation, you will have the right to be represented by an employee or an organization representative of your own choosing. A duplicate copy of this notice is enclosed for your representative. You and/or your representative will have the right to introduce witnesses in your behalf, to hear all testimony introduced, and to question all witnesses. If you desire any other witnesses who may provide material facts, please furnish names as soon as possible.

*J. L. Moore*
J. L. Moore
Superintendent of Terminals

300 Kennedy Road
Cheektowaga, NY 14227

Carrier intends the following witnesses to be in attendance (other witnesses may be called):
J. L. Moore

Enclosure



PLAINTIFF'S
EXHIBIT
4

Operating Subsidiary: Norfolk Southern Railway Company

MEMO                    **Browse panel**                    05-03-2005 23.55.30
Command =>
Board ........ **NSC.GAGIB**         GEORGIA DIVISION SUPERINTENDENT NOTICES
Description ... **BULLSN-022**

                              Page    1( . 2) Line    1 Col   1( 66)
--------------------------------------------------------------------------

: --- Received from NSC.GABULLS  529-1341           05-03-05 15.04 :
:   -> NSC.GAGIB           GEORGIA DIVISION SUPERINTENDEN      :
:            NORFOLK   SOUTHERN   CORPORATION                  :
:                    GEORGIA DIVISION                          :
:                 SUPERINTENDENT'S NOTICE                      :
:                                                              :
:                         MAY 3, 2005                          :
:                                                              :
: BULLETIN NO. SN-022                                          :
:                                                              :
: TO ALL CONCERNED:                                            :
:                                                              :
: Solicitation of any type, including recruitment and/or union :
: organizing among agreement employees, is prohibited on the  :
: private property of Norfolk Southern. Union activities in the :
--------------------------------------------------------------------------
F1=Help F3=Exit F4=Print F5=Copy F7=Bkwd F8=Fwd  F10=Actions F11=Keys F12=Close
F13=Top F14=Bottom F17=Find F19=Left F20=Right F23=Standby



PLAINTIFF'S
EXHIBIT
5

```
MEMO                        Browse panel                    05-03-2005 23.56.52
Command =>
Board ......... NSC.GAGIB        GEORGIA DIVISION SUPERINTENDENT NOTICES
Description ... BULLSN-022
                                        Page    2(    2) Line    16 Col   1( 66)
-------------------------------------------------------------------------------
: work place by agreement employees and their representatives are         :
: limited to handling claims and grievances, disciplinary                 :
: investigations and maintenance of a bulletin board to communicate       :
: routine and non-controversial matters, to the extent necessary,         :
: and not to interfere with safety or the efficiency of the work          :
: operations.                                                             :
:                                                                         :
: All operating employees should be governed accordingly.                 :
:                                                                         :
:                                                                         :
:                                   D. C. Talley                          :
:                                   Division Superintendent               :
:                                                                         :
:                                                                         :
:                                                                         :
:                                                                         :
:                                                                         :
-------------------------------------------------------------------------------
F1=Help F3=Exit F4=Print F5=Copy F7=Bkwd F8=Fwd  F10=Actions F11=Keys F12=Close
F13=Top F14=Bottom F17=Find F19=Left F20=Right F23=Standby
```



Norfolk Southern Corporation
223 East City Hall Avenue
Norfolk, Virginia 23510-1728

H. R. Mobley
Assistant Vice President
Labor Relations
(757) 629-2425

May 20, 2005

RL1

Mr. W. E. Knight, General Chairman
Brotherhood of Locomotive Engineers
and Trainmen
P. O. Box 279, South Street
Wheelersburg, Ohio 45694

Mr. R. H. Linsey, General Chairman
Brotherhood of Locomotive Engineers
and Trainmen
1807 Elmwood Avenue, Suite 116
Buffalo, New York 14207

Mr. R. C. Wallace, General Chairman
Brotherhood of Locomotive Engineers
and Trainmen
P. O. Box 16039
Asheville, North Carolina 28816

Mr. B. S. Daniel, General Chairman
United Transportation Union
P. O. Box 530
Gordon, Georgia 31031

Mr. P. E. Emert, General Chairman
United Transportation Union
427 West Broadway Avenue
Maryville, Tennessee 37801

Mr. W. B. Headrick, General Chairman
United Transportation Union
289 Bailey Lane
Powells Crossroads, Tennessee 37397

Mr. J. A. Houk, General Chairman
United Transportation Union
2823 Williamson Road, Suite 5
Roanoke, Virginia 24012

Mr. L. P. King, Jr., General Chairman
United Transportation Union
145 West Campbell Avenue, Suite 207
Roanoke, Virginia 24011

Mr. D. W. Otten, General Chairman
United Transportation Union
6267 Howard Road
Sunbury, Ohio 43074

Mr. D. G. Strunk, Jr., General Chairman
United Transportation Union
817 Kilbourne Street
Bellevue, Ohio 44811

Gentlemen:

This refers to the campaign that is apparently underway with respect to the representation of train service employees on NS. I'm sure you all recognize that, during this period, we must continue our joint efforts to operate trains and serve our customers. Indeed, our collective livelihoods depend on us doing just that, for it is our customers who provide the revenues that pay the wages of our employees.

The Railway Labor Act (RLA) provides that employees have the right to decide whether to be represented, and if so, by whom. NS will be strictly neutral with respect to organizational activities and will not interfere with our employees' rights under the RLA. We will also continue our policy of not permitting organizational activities on the private property of NS.



Mr. W. E. Knight, et al
May 20, 2005
RL-1
Page 2

NS practice has been to allow local union officials to mark off to conduct union business (such as handling of claims and grievances, attending disciplinary investigations, and conducing union meetings) as may be required by collective bargaining agreements and consistent with the needs of service. NS has historically permitted other employees to mark off for personal reasons so long as it would not interfere with the safety or efficiency of our operations.

As this campaign goes forward, we anticipate that some employees--who are not local union officials--may want to mark off for representation activities. NS will not become involved in the campaign by routinely approving requests from such employees to mark off explicitly for purposes of such union organizing activity. However, NS will continue its policy of permitting reasonable mark offs for personal reasons consistent with the requirements of service. And, of course, employees who--with the approval of supervision--mark off for personal reasons, may choose to engage in off-the-property organizational activities. Although we obviously cannot commit that we will approve all or most employee requests to mark off for personal reasons, we intend to be even handed in our approach. I encourage you to make Labor Relations aware of any concerns that you may have about our handling of any individual situation.

In closing, I want to say that I am counting on our two operating craft unions and each of you to do your utmost to keep our employees, your members, marked up and available for work so that service to our customers during this period will be maintained.

Very truly yours,

H. R. Mobley

cc:   M. R. MacMahon

PAUL C. THOMPSON
International President

RICK L. MARCEAU
Assistant President

DAN E. JOHNSON
General Secretary and Treasurer

**united**
**transportation**
**union**



14600 DETROIT AVENUE
CLEVELAND OHIO 44107-4250
PHONE: 216-228-9400
FAX: 216-228-5755
www.utu.org

May 20, 2005

All NS Local Officers
All NS Local Chairpersons

Dear Brothers and Sisters:

Norfolk Southern has issued instructions advising all operating employees that "[S]olicitation of any type, including recruitment and/or union organizing among agreement employees, is prohibited on the private property of Norfolk Southern." These instruction were no doubt issue because of the BLET/IBT organizing activities.

We highly doubt that BLET/IBT members and organizers will conform to these instructions. Therefore, it is extremely important that any such activity be promptly reported to this office so that appropriate action may be taken with NS officials.

If any BLET/IBT member discusses, or attempts to discuss, any issues related to the BLET/IBT "A-Card" campaign with any UTU member while on the job or on company property we request that you immediately provide that information to this office. It will be necessary to include specific information, i.e., the name of the BLET/IBT member(s), where the discussion occurred (job or assignment designation, yard office, etc.), the date and time the discussion took place, and exactly what was said.

Please remind UTU members to document these occurrences and promptly provide accurate information. **Don't let the BLET/IBT steal UTU Jobs!**

Fraternally yours,

*Paul C. Thompson*

Paul C. Thompson
International President





PLAINTIFF'S EXHIBIT
2