UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, 1370 Ontario Street, Mezzanine, Cleveland, Ohio 44113, <br><br> Plaintiff, <br><br> v. <br><br> NORFOLK SOUTHERN RAILWAY CO. Three Commercial Place, Norfolk, VA 23510, <br><br> and <br><br> NORFOLK SOUTHERN CORP. Three Commercial Place, Norfolk, VA 23510, <br><br> Defendants. | CASE NUMBER 1:05CV01188 <br><br> JUDGE: Richard W. Roberts <br><br> DECK TYPE: TRO/Preliminary Injunction <br><br> DATE STAMP: 06/14/2005 |

### UNITED TRANSPORTATION UNION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO INTERVENE

United Transportation Union ("UTU") respectfully submits its Memorandum in Support of its Motion to Intervene pursuant to Fed. R. Civ. P. 24(a)(2) or alternatively, 24(b). Brotherhood of Locomotive Engineers and Trainmen ("BLET") filed its Complaint herein regarding Norfolk Southern Railway's no-solicitation policy on the property due to BLET's organizing campaign. UTU should be allowed to intervene of right pursuant to Fed. R. Civ. P. 24(a)(2) herein since it has a clear interest relating to this matter which is the subject of this action filed by the BLET, and UTU is so situated as the representative of the craft or class of conductors and trainmen on Norfolk Southern Railway that the

disposition of this action may as a practical matter impair or impede UTU's ability to protect that interest. UTU's interest clearly cannot be adequately represented by NS or BLE whose interests are obviously counter to UTU's. UTU alternatively seeks permission to intervene as a matter of discretion pursuant to Fed. R. Civ. P. 24(b), since UTU's cross-claim and BLE's complaint have questions of law and facts in common.

## FACTS

The United Transportation Union ("UTU"), an unincorporated labor organization, is the duly authorized representative of the craft or class of conductors and trainmen employed by NS. (BLET Complaint ¶ 10).

The BLET is the certified bargaining representative of the craft or class of engine service employees on NS pursuant to a certification issued by the National Mediation Board on June 23, 1989 in Case No. R-5888. Representation of locomotive engineers on the NS is carried out by General Committees of the BLET, which are headed by BLET General Chairmen. (BLET Complaint ¶ 9).

Defendant Norfolk Southern Railway Company ("NSR") is a "carrier" within the meaning of the Railway Labor Act, 45 U.S.C. § 151, *et seq*. It employs operating craft employees represented by the UTU and the BLET, and regularly conducts business and maintains trackage in this judicial district. NSR is incorporated under the laws of the Commonwealth of Virginia, and is a wholly-owned subsidiary of Defendant Norfolk Southern Corporation. (BLET Complaint ¶ 7).

On March 9, 2005, H. R. Mobley, Assistant Vice President of Labor Relations for NS, wrote to the General Chairpersons of the BLET and UTU on the NS regarding "the ongoing recruitment efforts" of BLET. Mobley announced that, "recruitment and/or organizing among agreement employees on the private

2

property of NS, falls outside our established practice, and will not be permitted." NS issued this policy to improve the safety conditions of its employees during this turbulent time. (BLET Complaint ¶ 11).

The issuance of the March 9, 2005 letter from NS to the General Chairpersons of the BLET and UTU coincided with the preliminary stages of an organizing campaign initiated by the BLET. (BLE Complaint ¶ 12). This organizational campaign involves an ongoing raid on UTU by BLET, seeking representation of the craft or class of trainmen on NS. (*Id.*).

On or about May 26, 2005, BLET began soliciting authorization cards from conductors and trainmen employed by the NS. If sufficient authorization cards, which demonstrate a showing of interest, are signed and collected, they could be used to initiate a representation proceeding among these conductors and trainmen at the NMB. (BLET Complaint ¶ 21).

Throughout this relevant time period, BLET members on the NS have approached UTU trainmen while on duty, asking them to support the raid on the UTU by signing these authorization cards. (BLET Complaint ¶¶ 14, 15). Several times, the BLET members engaged in verbal harassment of and physical assault on UTU members while on duty whenever they expressed a disinterest in the BLET's pleas for signatures.

With respect to BLET's on-duty organizing tactics, railroading is a dangerous profession, especially for operating employees. These workers cannot afford to be distracted when engaged in the operation of trains and engaged in work off of the trains in the yard. Their focus must always be on the safe operation of the trains and their surroundings in order to ensure the safety of themselves, fellow workers and the public. When UTU employees are confronted by BLET organizers when at work, this can lead to less than safe working conditions.

While NS' no-solicitation policy on its face may promote a safer environment on the carrier, NS's application of it has not been handled evenly. On several occasions, BLET members have violated this policy, and NS has not disciplined these individuals, or has only warned these individuals. On the other hand, in certain instances where a UTU member is alleged to have violated the policy, that individual has been disciplined. In other words, UTU believes it has been given less preferential treatment than BLET with respect to NS's application of this policy.

BLET filed a Complaint seeking to prohibit NS's no-solicitation policy. UTU opposes this request and seeks additional relief based on NS's uneven application of the policy.

### ARGUMENT

**A.    Intervention of Right–Fed. R. Civ. P. 24(a)(2).**

Rule 24(a)(2) states in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2).

Parsing the language of the rule, the D.C. Circuit has held that qualification for intervention as of right depends on the following four factors:

> (1) the timeliness of the motion; (2) whether the application "claims an interest relating to the property or transaction which is the subject of the action"; (3) whether "the applicant is to situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) whether "the applicant's interest is adequately represented by existing parties."

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074. D.C. Cir. 1998) (quoting Fed.R.Civ.P. 24(a)(2)) (citations omitted). The D.C. Circuit Court has further held that, in addition to establishing its qualification for intervention under Rule 24(a)(2), a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution. *See Military Toxics Project v. EPA*, 146 F.3d 948, 953 (D.C.Cir. 1998); *Mova Pharm.*, 140 F.3d at 1074; *Building & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C.Cir. 1994). As the D.C. Court has explained, "because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, he must satisfy the standing requirements imposed on those parties." *City of Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C.Cir.1994).

To establish standing under Article III, a prospective intervenor - like UTU must show: (1) injury-in-fact, (2) causation, and (3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).

Here, UTU could possibly lose its certification from the NMB to represent the craft or class of conductors and trainmen under the RLA, which could result in the loss of thousands of UTU members who now pay dues to the organization. Also, if BLET is successful in its claims to enjoin the use of the no-solicitation policy on NS, UTU members could be constantly harassed by BLET members while at work to sign authorization cards, even when they have no interest in doing so in order to stop the aggressive, and sometimes threatening, tactics by the BLET organizers. UTU obviously seeks to protect the safety of its members who need to focus on work, not BLET propaganda, and to protect the right of its members to choose the representative of their choice under Section 2 Fourth of the Railway Labor Act, 45 U.S.C. § 152 Fourth.

Moreover, it is self-evident that UTU has standing in this matter based upon its status as the

representative of conductors and trainmen and the BLET's filing which demonstrates UTU's obvious role in this action. Therefore, it is clear that UTU has Article III standing.

Turning to the four-factor test, the balance of the analysis requires UTU's intervention under Rule 24(a)(2).

First, UTU's motion is timely since it was filed within a week after BLET served its Complaint herein. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C.Cir. 2003) (motion to intervene, filed less than two months after plaintiff's filed complaint, was timely).

Second, since UTU has constitutional standing, that "alone is sufficient to establish [UTU] has 'an interest relating to the property or transaction which is the subject of the action.'" *Id.* (quoting Fed.R.Civ.P. 24(a)(2)). In any event, UTU's interest in BLET's organizational campaign is clear since UTU is the certified representative of the NS employees at issue.

Third, UTU is "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest." Fed. R. Civ. P. 24(a)(2). In this case, where UTU could be easily disadvantaged in the BLET's organizing campaign by an adverse decision herein, whether that involves elimination of the no-solicitation policy or the continuation of the unbalanced treatment UTU has received from NS to date, UTU would have a difficult time repairing the damage, which could be irreparable, if NS and BLET collude to oust UTU through this organizing campaign and/or lawsuit.

Fourth, the final question is whether the UTU's interest is adequately represented by existing parties. Fed. R. Civ. P. 24(a)(2). The Supreme Court has held that this "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528,

538 n. 10, (1972). Citing *Trbovich*, the D.C. Circuit has described this requirement as "not onerous." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). Measured by that standard, neither of the two groups of existing parties in this case – BLET and NS adequately represent the UTU's interests.

Both NS and BLET are adversaries of UTU in this context. First, BLET's interests obviously run counter to UTU's since it is engaged in a raid on UTU on NS, which is the basis of the Complaint. NS, on the other hand, would be happy to see both parties fail in a representation dispute since that would rid the carrier of representation. In sum, it is clear once again that this factor has been satisfied here.

As a result, all four factors, plus the Article III standing test, are satisfied by UTU, and it should be allowed to intervene under Rule 24(a)(2). *See, e.g., Brithish Airways Board v. NMB*, 533 F.Supp. 150, 153 (E.D. NY 1982); *White v. Douds,* 80 F.Supp. 402, 405 (S.D. NY 1948); *Saipan Hotel Corp. v. NLRB,* 1995 WL 583631, 149 LRRM (BNA) 3061 (D.N. Mar. I, 1995).

### B.   Permissive Intervention – Fed. R. Civ. P. 24(b)

Rule 24(b) provides in pertinent part:

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.
>
> * * *
>
> In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

With respect to Rule 24(b)'s standards, UTU's application is timely, as discussed herein. Also, UTU's claim against NS, like BLET's, relates to the legality of the no-solicitation policy under the RLA

and the facts surrounding BLET's organizational campaign. Moreover, UTU's intervention will not "unduly delay or prejudice the adjudication of the rights" of NS and BLET since an answer to the Complaint has not even been filed in the action. As a result, alternatively, UTU should be allowed to intervene under Rule 24(b) as a matter of discretion.

## CONCLUSION

Based on the foregoing facts and conclusions of law, UTU's Motion to Intervene should be granted.

Respectfully submitted,

_____
Clinton J. Miller, III (D.C. Bar No. 355602)
General Counsel
Daniel R. Elliott, III
Associate General Counsel
United Transportation Union
14600 Detroit Avenue
Cleveland, Ohio 44107
Tel: (216) 228-9400
Fax: (216) 228-0937

_____
Joseph Guerrieri, Jr.
Guerrieri, Edmond, Clayman & Bartos, P.C.
1625 Massachusetts Avenue, N.W., Ste. 700
Washington, DC 20036-2243
Tel: (202) 624-7400
Fax: (202) 624-7420

Attorneys for Applicant for Intervention
United Transportation Union