UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:05cv01188 (RWR) |
| NORFOLK SOUTHERN RAILWAY CO. and NORFOLK SOUTHERN CORP., | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF BLET'S OPPOSITION TO UTU'S MOTION TO INTERVENE**

**Introduction**

The Brotherhood of Locomotive Engineers and Trainmen ("BLET") initiated the instant lawsuit to vindicate the organizational rights guaranteed by Section 2, Third and Fourth of the Railway Labor Act ("the RLA"), 45 U.S.C. § 152, Third and fourth, of Locomotive Engineers employed by Defendants Norfolk Southern Ry. Co and Norfolk Southern Corp. (collectively "NS" or "Carrier"). The specific organizational rights of BLET-represented Locomotive Engineers that are currently being interfered with by the Carrier's unconditional no union solicitation policy on its property are the right to assist Trainmen on the Carrier in changing their representative and to solicit UTU members, whether they are Trainmen represented by the UTU or Locomotive Engineers represented by the BLET, to change their union affiliation

On June 30, 2005, the United Transportation Union ("UTU") moved the Court to intervene as a Party-Plaintiff in this action in order to assert a claim against the Carrier for allegedly failing to enforce its no union solicitation policy evenly. According to the UTU, "it has been given less preferential treatment than the BLET with respect to the application of this

policy." UTU Mem. in Support of Mot. to Intervene at 4.  The UTU seeks have the Court declare the Carrier in violation of the RLA for uneven application of its policy and order the Carrier to discipline BLET members for violation of the policy.  UTU Proposed Complaint at 8. Thus, the UTU appears to be asserting that the Carrier's policy is lawful and only the alleged discriminatory application of the policy by the Carrier is causing it harm.

The UTU's motion is without merit.  It does not have the right to intervene in this action because it has no interest in the issue before the Court, which is whether the Carrier's policy unlawfully interferes with the organizational rights of BLET-represented Locomotive Engineers. Additionally, the UTU's stated position is that the Carrier's policy is lawful and necessary to protect safe working conditions.  Id. at 3-4 .  Therefore, its interest in seeing the policy upheld is more than adequately protected by the Carrier in this case.  On the other hand, if the BLET prevails and the Carrier's no union solicitation policy is determined to be unlawful, then the issue of discriminatory enforcement raised by the UTU becomes moot, for the Carrier may not enforce the policy at all.  Furthermore, if the Court determines the policy to be lawful, that disposition of this matter will not impede or impair the UTU from filing a subsequent action against the Carrier for discriminatory enforcement.

As for permissive intervention by the UTU, its participation in this lawsuit will not add any significant or useful contribution to the development of the underlying factual or legal issues before the Court.  And, as stated above, its asserted interest in having the Carrier's no union solicitation policy upheld by the Court is adequately protected by the Carrier.  Therefore, permissive intervention should also be denied.

**ARGUMENT**

I. **THE UTU MAY NOT INTERVENE AS OF RIGHT IN THIS ACTION BECAUSE IT DOES NOT SATISFY THE CRITERIA OF RULE 24(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

Federal Rule of Civil Procedure 24(a) provides in pertinent part:

Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In Fund for Animals v. Norton, 322 F.3d 728 (D.C. Cir. 2003), the Circuit Court of Appeals for the District of Columbia held that qualification for intervention as of right depends on the following four factors:

'(1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction which is the subject of the action"; (3) whether "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) whether "the applicant's interest is adequately represented by existing parties.'

Id. at 731, *quoting* Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998). The Court of Appeals further held that, "in addition to establishing its qualification for intervention under Rule 24(a)(2), a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution." Id. at 731-32.

As set forth below, the UTU's motion for intervention does not satisfy the second, third or fourth factors identified by the Court of Appeals or the standing requirement under Article III of the Constitution. Therefore, it may not intervene as of right in this action.

**A.      The UTU Has No Standing In This Action and Admittedly Has No Interest In Vindicating the Section 2, Third and/or Fourth Rights of Locomotive Engineers That Are Being Interfered With By the Carrier's No Union Solicitation Policy.**

"To establish standing under Article III, a prospective intervenor -- like any party -- must show: (1) injury-in-fact, (2) causation, and (3) redressability." Fund for Animals, 322 F.3d at 732-33.  The UTU claims that its meets these requirements because it could possibly lose its certification from the National Mediation Board to represent the craft of class of Trainmen on the Carrier, and because if the Carrier's no union solicitation policy is ruled unlawful, its members could be harassed by BLET members while at work.  These arguments are fundamentally flawed and do not support either Article III standing or an identifiable interest in this action.

First, the sole issue presently before the Court is the lawfulness of the Carrier's blanket no union solicitation policy, as that policy is currently being applied to BLET-represented Locomotive Engineers.  An injunction against enforcement of that policy will have absolutely no effect on the UTU's certification to represent the Carrier's Trainmen because the RLA vests the power to determine who is the proper representative of a craft or class of employees exclusively with the NMB.  *See* Switchmen's Union v. National Mediation Bd., 320 U.S. 297, 305 (1943). Indeed, the NMB's authority over certification of who is the proper representative of a craft or class is so plenary that federal courts are "virtually forbidden" to review its determination.  *See* UTU v. United States, 987 F.2d 784, 789 (D.C. Cir. 1993).  In this action, the Court is not presented with a dispute over whether the UTU or the BLET is the proper representative of the Carrier's Trainmen, nor could it make such a determination.  Therefore, the UTU's argument that this action could result in a loss of its certification cannot support its claim of Article III standing.

The UTU's argument that its members could be harassed at work if the Carrier's policy is ruled unlawful does not afford standing because the UTU cannot seriously claim that it will be injured by an injunction against unlawful conduct by the Carrier.  In addition, the UTU's argument on this point demonstrates its lack of interest in the "the property or transaction which is the subject of the action." Fed. R. Civ. P. 24(a).  The relevant "property" at issue in this action is the organizational rights of Locomotive Engineers guaranteed by Section 2, Third and Fourth of the RLA.  The UTU does not attempt to claim that it possesses any interest in the statutory rights of the Carrier's Locomotive Engineers.  Rather, the rights it claims to be asserting are those of Trainmen to be free from discriminatory enforcement of the Carrier's no union solicitation rule.  Those rights, however, are not at issue in this case.  No one assert the right to discriminate against UTU members.  Consequently, the UTU does not have an interest in the "property" that is the subject of this action.

    **B.**    **The UTU's Asserted Interest In Having the Carrier's No Union Solicitation Policy Upheld Is Adequately Protected By the Carrier, and No Possible Disposition of this Matter Will Impair or Impede The UTU's Ability to Challenge the Alleged Discriminatory Enforcement of the Policy By the Carrier.**

Although it claims no interest in the organizational rights of Locomotive Engineers, the UTU's does claim two separate interests related to the Carrier's no solicitation policy, which it argues are implicated by this action.  First, it argues that the policy is lawful and necessary to maintain safe working conditions for its working members, and, therefore, it has an interest in having the policy upheld by the Court.  Its second argument is that the policy is being discriminatorily applied to Trainmen.  Neither of these arguments qualifies the UTU to intervene as of right in this action because the interest in having the policy upheld is adequately protected by the Carrier, and the alleged discriminatorily enforcement of the policy is distinct from the

5

issue of the lawfulness of the policy that is before the Court and may be brought by the UTU in a separate lawsuit.

In addressing the adequate representation element of Fed. R. Civ. P. 24(a), the Supreme Court has held that the "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972). Although this requirement is not "onerous," the "original burden of showing inadequate representation rests on the applicant for intervention." Dimond v. District of Columbia, 792 F.2d 179, 192 (D.C. Cir. 1986). In its motion, the UTU has failed to meet even this minimal burden of demonstrating how its interest in having the Carrier's no solicitation policy upheld will not be adequately represented by the Carrier or how its interest in having the policy upheld is divergent from the Carrier's in any manner.

Where an existing party seeks the same objectives as a proposed-intervenor, adequate representation is presumed. *See, e.g.,* Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179-181 (2d Cir. 2001); Clark v. Putnam County, 168 F.3d 458, 461-462 (11th Cir. 1999). The Carrier's objective in this case of having its blanket no union solicitation policy ruled lawful is clearly identical to the UTU's. They may seek to have the policy upheld for different reasons, but there is no difference in the final objective. Quite tellingly, the UTU does not even attempt to argue how its interests and the Carrier's interests in having the policy upheld may be different. As result, the UTU has not satisfied its burden on this element of Fed. R. Civ. P. 24(a).

Turning to the UTU's claim of discriminatory application of the Carrier's no union solicitation policy, the BLET does not dispute that this would be unlawful. Nevertheless, this claim is wholly unrelated to the issue of whether the policy is lawful in the first instance and

permitting the UTU to intervene to pursue this claim would not assist in the development of what amounts to a purely legal issue before the Court at this point. Moreover, there is no possible disposition of this action that could as a practical matter impair or impede the UTU's ability to protect its interest in preventing the Carrier from discriminatorily applying its policy. If the policy is found unlawful, then the UTU's claim of discriminatory application is moot because the Carrier may not enforce the policy all. On the other hand, if the policy is found legally permissible, then the UTU may pursue its discriminatory application claim unimpeded in separate lawsuit.

Because the UTU has failed to satisfy all of the requirements of Fed. R. Civ. P. 24(a) its motion to intervene as of right must be denied.

## II. THE UTU SHOULD NOT BE PERMITTED TO INTERVENE UNDER RULE 24(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

Rule 24(b) of the Federal Rules of Civil Procedure states, in relevant part, that anyone may be permitted to intervene in an action "when an applicant's claim or defense and the main action have a question of law or fact in common." Discretion in granting permissive intervention is vested with the Court. Id. In exercising its discretion, the Court may consider whether the would-be intervenor's input is likely to make a significant or useful contribution to the development of legal or factual issues. *See* League of United Latin Am. Citizens v. Clements, 884 F.2d, 185, 189 (5th Cir. 1989). The Court may also consider whether the applicant's interests are adequately represented by another party, *see* New Orleans Pub. Serv., Inc. v. United Pipe Line Co., 732 F.2d 452, 472 (5th Cir. 1984), *cert. denied,* 469 U.S. 1019 (1984), and

whether an adequate remedy is available to the applicant in another action. <u>Meyer Goldberg, Inc. v. Fisher Foods, Inc.</u>, 717 F.2d 290, 293-294 (6th Cir. 1983).

In the instant case, there appears to be purely a legal issue before the Court concerning the lawfulness of the Carrier's no union solicitation policy. It is entirely unclear how the UTU's participation in this action would significantly aid the Court in a decision of this legal issue. Certainly, the UTU does not give any indication of what unique input it may provide that would be of value to the Court. To the contrary, on the issue of the legality of the policy it appears that the UTU will advance the very same argument made by the Carrier regarding the alleged requirement of neutrality between competing labor organizations. In light of the identical nature of the UTU and Carrier's position with regard to the no union solicitation policy, there is no need for the UTU to intervene in this action.

Furthermore, for the reasons set forth in detail above, the UTU's interest in having the Carrier's policy upheld are adequately represented by Carrier. And, should the Court find the no union policy lawful, the UTU will be free to file an separate action challenging its alleged discriminatory application. Accordingly, the UTU request for permissive intervention should be denied.

## **CONCLUSION**

For the reasons stated above, the UTU's has failed to establish its qualification for intervention as of right under Fed. R. Civ. P. 24(a) or that its permissive intervention under Fed. R. Civ. P. 24(b) would significantly help develop relevant issues that will assist the Court in reaching a just and accurate decision on the lawfulness of the Carrier's no union solicitation policy. Accordingly, its to Motion to Intervene should be denied.

Dated: July 11, 2005.                                  Respectfully submitted,


                                                                         Roland P. Wilder, Jr. (D.C. Bar# 69609)
                                                                         Joshua D. McInerney (D.C. Bar# 479471)
                                                                         Baptiste & Wilder, P.C.
                                                                         1150 Connecticut Ave., N.W., Suite 500
                                                                         Washington, D.C. 20036
                                                                         (202) 223-0723
                                                                         rpwilderjr@bapwild.com
                                                                         jmcinerney@bapwild.com

                                                                         Attorneys for Plaintiff BLET