UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN,<br><br>        Plaintiff,<br><br>v.<br><br>NORFOLK SOUTHERN RAILWAY CO. and NORFOLK SOUTHERN CORP.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:05cv01188 (RWR)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF
ORDER BY THE COURT ON JULY 8, 2005**

**Introduction**

This Reply Brief is filed by the Plaintiff Brotherhood of Locomotive Engineers & Trainmen ("BLET") in accordance with the Court's Order of July 8, 2005, in which we were directed to respond to the defendants' arguments pertaining to subject-matter jurisdiction and standing. As noted below, the standing issue raised by the defendants need not be addressed in the posture of this case. This is because the defendants acknowledge, as they must, the standing of a certified representative to assert claims of craft or class employees under § 2, Third and Fourth of the Railway Labor Act, 45 U.S.C. § 152, Third & Fourth. Defs.' Supp. Br. at 5. Since the defendants' impermissibly overbroad no-union solicitation rule adversely affects the statutory rights of Locomotive Engineers represented by the BLET no less than those of other Norfolk Southern "employees," it is unnecessary for the BLET to sue on behalf of employees for whom it is not already the certified bargaining representative in order to obtain the relief sought in the complaint.

We also respond below to the defendants' strained argument that the rights of Locomotive Engineers we seek to vindicate in this proceeding do not exist under the RLA. According to their novel, unsupported view of Section 2, Fourth, Engineers cannot "assist" Trainmen "in organizing the labor organization of their choice" because they are in a different craft or class. This narrow view does violence to the statute because it ignores the definition of "employee" and treats the term "labor organization" as the equivalent of the term "representative." The notion that the BLET cannot be "organized" on the NS's property, apparently because it was founded in 1863 and already represents Locomotive Engineers, both disregards the history of the statute and is nonsensical.

## I. THE BLET HAS STANDING TO REPRESENT ITS MEMBERS WHO ARE ADVERSELY AFFECTED BY THE CARRIER'S IMPERMISSIBLY OVERBROAD NO-UNION SOLICITATION RULE

Even under the unduly restrictive view of associational standing adopted by the Sixth Circuit Court of Appeals in <u>Adams v. Federal Express Corp.</u>, 547 F.2d 319 (6th Cir. 1976), *cert. denied,* 431 U.S. 915 (1977), it cannot be denied that unions which have been designated as the "representative" of a craft or class have standing to assert the statutory rights of employees they represent. *See, e.g.,* <u>Held v. American Airlines, Inc.</u>*,* 13 F. Supp. 2d 20 (D.D.C. 1998). This principle is not disputed by the defendants. Defs.' Supp. Br. at 5. The question here is whether Locomotive Engineers represented by the plaintiff who are adversely affected by the no-union solicitation rule possess rights under Section 2, Fourth, and so can complain about the rule's interference with those rights, or whether they are left wholly outside the protection of the statute. Only in the latter instance would the BLET lack standing under <u>Federal Express</u>.

Below, at 4-8, and in our initial Reply Brief of July 8, 2005, at 3-9, we demonstrate how rights possessed by Engineers represented by the BLET are interfered with by the no-union

solicitation rule adopted by the Carrier. In short, BLET-represented employees are forbidden under threat of discipline from soliciting their fellow employees to designate the BLET as their "representative" and/or to become members of the BLET. The undoubted adverse effect of the no-union solicitation rule on members represented by the BLET affords it standing to attack the rule's legality under even the narrowest formulation of associational standing. For this reason, it is unnecessary for us to challenge *Federal Express* as incorrectly decided and urge that the rule it espouses not be adopted in this jurisdiction.[1]

### II. THERE IS NO DEFINITION OF "ORGANIZING" UNDER THE RLA THAT EXCLUDES THE ACTIVITY THE DEFENDANTS' EMPLOYEES WHO ARE ALSO MEMBERS OF THE BLET ARE ENGAGED IN.

In its Reply to the Defendants' Opposition to Plaintiff's Application for Preliminary Injunction, the BLET made clear that the specific statutory rights of Locomotive Engineers that are currently being interfered with by the Carrier's blanket no-union solicitation policy are the right to "assist" Trainmen on the Carrier in "organizing the labor organization of their choice" and to solicit UTU members, whether they are Trainmen represented by the UTU or Locomotive Engineers represented by the BLET, to change their union affiliation. The principal contention of the Carrier's supplemental brief is that this Court does not have subject-matter jurisdiction

---

[1] With deference, we suggest that the reasoning of Federal Express is flawed. Not only is the rule adopted by the Sixth Circuit Court of Appeals inconsistent with Texas & N.O. R.R. v. Brotherhood of Railway & S.S. Clerks, 281 U.S. 548 (1930) (plaintiff not a "certified" representative), which the panel professed to follow, but it represents a far narrower view of associational standing than is found elsewhere in the law. *E.g.,* Sierra Club v. Morton, 405 U.S. 727 (1972); Sullivan v. Little Huntington Park, 396 U.S. 229 (1969). *See also,* NLRB v. Brashear Freight Lines, Inc., 119 F.2d 379, 380 (8th Cir. 1941). The rule's infirmity is well illustrated by the this case, in which only the United Transportation Union would have standing to represent Trainmen desirous of designating the BLET as their bargaining representative, according to the argument put forward by the defendants. Far from protecting the organizational rights of Trainmen, the UTU has taken the position that the no-union solicitation rule ousting all union activity from the workplace is permissible.

over the BLET's Complaint because Locomotive Engineer employees of the Carrier do not possess these statutory rights. The Carrier's argument is wrong, for it ignores the plain language of Section 2, Fourth.

> **A. The Carrier's No-Union Solicitation Policy Coerces Employees "To Join or Remain or Not to Join or Remain Members of Any Labor Organization" In Violation of Section 2, Fourth of the RLA, and, Therefore, Is Unlawful.**

The Carrier argues that Section 2, Eleventh (c) of the RLA does not confer an enforceable right of Locomotive Engineers to solicit UTU members, whether they are Trainmen or Locomotive Engineers, to change their union affiliation and join the BLET. The problem with the Carrier's statement is that the BLET does not argue that Section 2, Eleventh (c) standing alone confers such a right. Rather, it is undisputed that Section 2, Eleventh (c) only provides operating employees with the right to join a union other than the designated representative of the employee's craft to meet the problem of intercraft mobility in the rail industry. *See* Pennsylvania R.R. Co. v. Rychlik, 352 U.S. 480, 493 (1957). This is why operating employee are not free to simply change their union affiliation to whatever labor organization they choose, but "only in those unions which have already qualified under Section 3, First of the Act, as electors of the union representatives on the National Railroad Adjustment Board."[2] Id. at 485.

The Section 2, Eleventh (c) right of operating employees to change union affiliation to unions which have already qualified under Section 3, First, however, can be infringed upon in such a manner that runs afoul of the mandate contained in Section 2, Fourth that "it shall be unlawful for any carrier . . . to influence or coerce employees in an effort to induce them to join

---

[2] The BLET and the UTU are labor organizations qualified under Section 3, First of the Act, as electors of the Union representatives on the National Railroad Adjustment Board. That is why, as pointed out by the Carrier, numerous Locomotive Engineers are dues paying members of the UTU and numerous Trainmen are dues paying members of the BLET. Decl. of Mobley ¶ 9.

4

or remain or not to join or remain members of any labor organization . . . ." And, that is exactly what the BLET is alleging the Carrier's blanket no-union solicitation policy is doing. It simply cannot be denied that the Carrier's policy, which prohibits operating employees from speaking with each other about changing their union affiliation despite their undisputed right to do so, coerces employees to remain members of their present labor organization or from joining another labor organization. The fact that the Carrier goes so far as to discipline operating employees who speak to each other about changing union affiliation further reinforces the coercive nature, effect and intent of the Carrier's policy.

In a footnote, the Carrier claims without citation that there is no "foundation for holding that RLA § 2 Third or Fourth protects the right that is conferred by § Eleventh (c)." Defs.' Supp. Brief at 8 fn. 5. To the contrary, the foundation for such a holding is the plain language of Section 2, Fourth. Regardless of the source of the right operating employees may exercise to change their union affiliation, Section 2, Fourth makes it unlawful to coerce or influence employees "to join or remain or not to join or remain members of any labor organization." The Carrier's no-union solicitation policy coerces employees, including BLET-represented Locomotive Engineers who are members of the UTU, from joining the BLET or not remaining members of the UTU. Therefore, the policy is a violation of the plain language of Section 2, Fourth and unlawful.

> **B.    The Narrow Reading of Section 2, Fourth Advanced By the Carrier In Denying Locomotive Engineers Have a Right to "Assist" Trainmen In "Organizing the Labor Organization of Their Choice" Is Without Merit.**

BLET-represented Locomotive Engineer "employees" of the Carrier are currently "assisting" Trainmen, also "employees" of the Carrier, in changing their representative and "organizing the labor organization of their choice." 45 U.S.C. § 152, Fourth. In response to the

5

second question posed by the Court in its July 8, 2005 Order, the Carrier argues that this does not come within the meaning of the word "organizing," as used in Section 2, Fourth. To support this argument, the Carrier makes a tortured and twisted reading of the language of Section 2, Fourth that is so restrictive of the statutorily protected organizational rights of employees as to make them inapplicable in almost any situation. As explained below, the plain language of Section 2, Fourth as well as the stated intent of the RLA does not support such a reading.

>Section 2, Fourth provides in pertinent part:
>
>No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizi*ng* the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees . . . .

Despite the clear import of this language in protecting any effort of employees to organize the labor organization of their choice, the Carrier first contends that its Trainmen employees are not engage in "organizing the labor organization of their choice" because the BLET is already in existence. Under its reading of Section 2, Fourth, the Carrier would restrict the protection given to employees in "organizing the labor organization of their choice" only to those situations where the labor organization the employees are organizing is not in existence. Under this reading, no protection is offered to employees in attempting to organize as members of the BLET, which has been in existence since 1863. This interpretation is nonsensical and ignores the broad protection of organizational rights that is contained in Section 2, Fourth. After all, the "company union" problem that largely brought Section 2, Fourth into being in 1934 was thought by Congress to require legislation designed to enable employees to express their free choice in being represented by and belonging to the standard rail organizations. *See* International Ass'n. of Machinists v. Street, 367 U.S. 740, 750 (1960).

The Carrier next asserts that its Locomotive Engineer employees are not entitled to "assist" Trainmen in "organizing the labor organization of their choice" because they are in a different craft or class. The language of Section 2, Fourth, however, plainly states, "No carrier, its officers, or agents shall deny or in any way question the right of its **employees** to join, organize, or assist in organiz*ing* the labor organization of their choice . . ." (emphasis added). The restriction that only employees in the same craft or class may "assist" fellow employees in "organizing the labor organization of their choice" does not exist. Moreover, the Carrier's reading ignores the definition of "employee" contained in Section 1, Fifth of the RLA, 45 U.S.C. § 151, Fifth, which broadly includes "every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee or subordinate official . . . ."[3] The term "employees," as used in Section 2, Fourth by definition refers to all employees of the Carrier regardless of which craft or class they belong. Therefore, Locomotive Engineers, as statutory "employees" of the Carrier, have the right to "assist" Trainmen in "organizing the labor organization of their choice."

---

[3] The full text of Section 1, Fifth reads:

> The term "employee" as used herein includes every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee or subordinate official in the orders of the Surface Transportation Board now in effect, and as the same may be amended or interpreted by orders hereafter entered by the Board pursuant to the authority which is hereby conferred upon it to enter orders amending or interpreting such existing orders: *Provided, however,* That no occupational classification made by order of the Surface Transportation Board shall be construed to define the crafts according to which railway employees may be organized by their voluntary action, nor shall the jurisdiction or powers of such employee organizations be regarded as in any way limited or defined by the provisions of this Act or by the orders of the Board.

The Carrier also would have the Court treat the term "labor organization" in Section 2, Fourth as having the same meaning as "representative." The problem with this reading is that the term "representative" is defined in Section 1, Sixth of the RLA, 45 U.S.C. § 151, Sixth, as "any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its or their employees, to act for it or them." If Congress had intended to restrict the provision of Section 2, Fourth, which protects the "employees" right to "assist" other employees in "organizing the labor organization of their choice," to selection of a "representative," it would have done so. It did not. The language was left intentionally broad because in the original 1926 Act there was complete freedom of association under the RLA, in that employees were free to join any labor organization they chose regardless of whether that labor organization was the majority representative of the employees' craft or class. This principle was also incorporated in Section 151a, which states in pertinent part, "The purposes of this chapter are . . . (2) to forbid any limitation upon freedom of association among employees or any denial, as condition of employment or otherwise, of the right of employees to join a labor organization . . . ." 45 U.S.C. § 151a.

In light of the broad freedoms guaranteed to employees by Section 2, Fourth, including the right of employees "to join, organize, or assist in organiz*ing* the labor organization of their choice," the Carrier's narrow reading of the statute, which would restrict such right to only situations where employees in particular craft or class are organizing a previously non-existent labor organization, must be rejected.

## CONCLUSION

For the reasons stated above and in its Reply to the Defendants' Opposition to Plaintiff's Application for Preliminary Injunction, which is incorporated herein by reference, the BLET

8

plainly has standing to assert the Section 2, Third and Fourth rights of Locomotive Engineers, and this Court has subject-matter jurisdiction to enjoin the Carrier's violation of those rights.

Dated: July 11, 2005                                    Respectfully submitted,


                                            Roland P. Wilder, Jr. (D.C. Bar# 69609)
                                            Joshua D. McInerney (D.C. Bar# 479471)
                                            Baptiste & Wilder, P.C.
                                            1150 Connecticut Ave., N.W., Suite 500
                                            Washington, D.C. 20036
                                            (202) 223-0723
                                            rpwilderjr@bapwild.com
                                            jmcinerney@bapwild.com

                                            Attorneys for Plaintiff BLET